IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYSEAN BARBER, | **8:20CV282** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| SCOTT FRAKES, DR. SEAN THOMAS, CYNTHIA POLAGE, DR. JEFF MELVIN, DR. BRANDON HOLLISTER, and DR. JEFFERY KASSELMAN, | |
| Defendants. | |

Plaintiff, RaySean Barber ("Barber"), a state prisoner currently incarcerated at the Lincoln Correctional Center, filed his pro se Complaint on July 16, 2020, and subsequently was granted leave to proceed in forma pauperis. Now that the required initial partial filing fee has been paid, the court conducts an initial review of Barber's Complaint (Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

Barber complains the defendants wrongfully placed him on an involuntary medication order ("IMO") after he was diagnosed with "schizoaffective disorder, bipolar type, multiple episodes, currently in acute episode." (Filing 1, ¶¶ 1, 2.) On November 11, 2019, Dr. Brandon Hollister, an NDCS psychologist, and Dr. Jeffrey Kasselman, an NDCS physician, submitted an application to NDCS's Involuntary Medication Hearing Committee ("IMHC") to administer psychotropic medication. (Filing 1, ¶¶ 3, 15-17.) The IMHC's members included two psychologists, Dr. Sean Thomas and Dr. Jeff Melvin, and a nurse practitioner, Cynthia Polage. (Filing 1, ¶¶ 4, 12-14.) The IMHC held a hearing on November 13, 2019, and issued the IMO.

(Filing 1, ¶¶ 4, 25.) Barber appealed, but the IMHC's decision was upheld by the NDCS Director, Scott Frakes. (Filing 1, ¶¶ 4, 11, 34.)

The foregoing six individuals are named as defendants in this action, and are sued only in their individual capacities for compensatory and punitive damages. (Filing 1, ¶¶ 11-16, 43-46.) Barber alleges the IMO has resulted in depression and requires painful monthly injections of Haldol. (Filing 1, ¶¶ 36-38, 43-45.)

Barber generally "asserts that the facts of this case indicate that his right to freedom of speech, against cruel and unusual punishment, and to equal protections of the law were violated by the acts of the defendants." (Filing 1, ¶ 5.) He states this action is brought pursuant to 42 U.S.C. §§ 1983 and 1985 for the deprivation of his constitutional rights under the First, Eighth, and Fourteenth Amendments. (Filing 1, ¶¶ 8, 39-42.)[1]

## II.  LEGAL STANDARDS ON INITIAL REVIEW

The Prison Litigation Reform Act ("PLRA") requires the court to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). *See also* 28 U.S.C § 1915(e)(2)(B) requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds

---

[1] The Fourteenth Amendment makes the First Amendment's Free Speech Clause and the Eighth Amendment's Cruel and Unusual Punishment Clause applicable against the States. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (First Amendment); *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (Eighth Amendment). The Fourteenth Amendment also contains an Equal Protection Clause and a Due Process Clause.

for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. iqly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III.  DISCUSSION

Liberally construing Barber's Complaint, this is a civil rights action brought under 42 U.S.C. §§ 1983 and 1985. Barber is not seeking to enjoin the IMO, but, rather, to hold six individuals personally liable for his alleged injuries.

### A. PLRA's Limitation on Remedies

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This statute applies to all federal actions brought by prisoners, including actions alleging violation of the First Amendment. *Sisney v. Reisch*, 674 F.3d 839, 842-43 (8th Cir. 2012).

3

A prisoner cannot recover compensatory damages without a prior showing of physical injury, but can seek nominal damages, punitive damages, injunctive relief, or a declaratory judgment without such a showing. *See Royal v. Kautzky,* 375 F.3d 720, 723 (8th Cir. 2004). Nominal damages of $1.00 are available to vindicate a violation of rights with no actual injury. *Id.* at 724. Punitive damages are available only when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to protected federal rights." *Id.* (internal quotation marks and citation omitted).

Barber's alleged depression and resulting loss of enjoyment of life are mental and emotional injuries.[2] *See Pyle v. Robin Sims*, No. 5:15-CV-05245, 2017 WL 663518, at *3 (W.D. Ark. Jan. 30, 2017) ("The Court could find no case law indicating that the worsening of mental or emotional symptoms, alone, qualifies as a compensable physical injury. A survey of all circuits indicated symptoms such as anxiety, sleeplessness, and hallucinations, even if considered to have some physical manifestation or component, do not pass the *de minimis* injury hurdle."), *report and recommendation adopted sub nom. Pyle v. Sims*, No. 5:15-CV-05245, 2017 WL 662991 (W.D. Ark. Feb. 17, 2017). The Eighth Circuit has not decided whether severe pain, standing alone, constitutes a physical injury under the PLRA, but has held that the injury must be greater than *de minimis*. *See McAdoo v. Martin*, 899 F.3d 521, 525-26 (8th Cir. 2018). Barber's allegation that he is administered painful injections of Haldol on a monthly basis does not appear to meet this threshold.

Thus, while the PLRA does not preclude Barber from pursuing his civil rights claims under 42 U.S.C. §§ 1983 and 1985, he may not be eligible for compensatory damages.

---

[2] Barber also claims he "is humiliated by having to file this action" due to "the personal information that will come out in this action" (Filing 1, ¶ 37), but this is not a redressable injury. *See, e.g.*, *Meredith v. Jefferson Cty. Bd. of Educ.*, No. CIV.A. 3:02CV-620-H, 2007 WL 3342258, at *7 (W.D. Ky. Nov. 9, 2007) ("[Plaintiff] is not entitled to recover for any invasion of privacy, harassment, embarrassment or humiliation that she may have personally suffered as a result of filing this lawsuit. These hardships arose from maintaining the lawsuit, and cannot be said to flow directly from Defendants' actions ….").

## B. Section 1985

Section 1985 "provides a cause of action for damages sustained as a result of … conspiracies to deprive individuals of equal privileges and immunities and equal protection under the law, 42 U.S.C. § 1985(3)." *Kelly v. City of Omaha*, 813 F.3d 1070, 1077 (8th Cir. 2016). "[T]he conspiracy not only must have as its purpose the deprivation of 'equal protection of the laws, or of equal privileges and immunities under the laws,' but also must be motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 829 (1983) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971)).

Because Barber has not asserted that the claimed conspiracy was motivated by any racial or other class-based, invidiously discriminatory animus, no viable § 1985 claim is stated. *See, e.g., Miller By A.M. v. Dorsey*, No. 4:18CV3031, 2018 WL 4854180, at *5 (D. Neb. Oct. 5, 2018) (§ 1985 claim dismissed on initial review where plaintiffs "asserted no factual allegations suggesting a racial or other class-based invidiously discriminatory animus.").

Barber's Complaint merely recites the words of § 1985, which does not satisfy federal pleading standards. "[P]laintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, … have not provided the 'showing' required by Rule 8 [of the Federal Rules of Civil Procedure]." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *see Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quoting Fed. R. Civ. P. 8(a)(2); citation omitted)).

 Also, "[i]n order to state a claim for conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" *Kelly*, 813 F.3d at 1078 (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). "This

standard requires that 'allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action.'" *Id.* (quoting *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989)).[3] Here, Barber merely pleads a conclusion that "[a]ll defendants, by agreeing to initiate involuntary medication on the basis of an application which asserted allegations that were not supported by any record, and where Barber was only taking advantage of his right to use grievance procedures and to eat only canteen [food], and after including into the record false allegations, did conspire for the purpose of depriving, either directly or indirectly, Barber, of the equal protection of the laws, or to equal privileges or immunities under the laws, causing action pursuant to 42 U.S.C.A. § 1985." (Filing 1, ¶ 42.)

Because Barber has failed to allege facts showing that any of the defendants' alleged misconduct arose from a meeting of the minds, no plausible claim for relief under § 1985 is stated. *See, e.g., Jones v. Carter*, No. 8:19CV288, 2019 WL 3429821, at *6 (D. Neb. July 30, 2019) (dismissing involuntarily committed sex offender's § 1985 claim on initial review); *Harrington v. Strong*, 363 F. Supp. 3d 984, 1000 (D. Neb. 2019) ("Although the Amended Complaint makes many general allegations of a widespread conspiracy, … Plaintiffs failed to allege sufficient facts to satisfy this pleading standard …."); *Miller*, 2018 WL 4854180, at *5 ("[T]he plaintiffs' bare, conclusory allegations that there was a conspiracy to deprive them of their rights are insufficient to state a claim for relief.").

### C. Section 1983

To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting

---

[3] Similarly, to state a § 1983 conspiracy claim, a plaintiff must allege "an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage. A plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together to deprive plaintiff of a federal right." *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988).

under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, public employees act under color of state law while acting in their official capacities or while exercising their responsibilities pursuant to state law. *Id.* at 50.

Director Frakes was clearly acting within his official capacity and exercising his assigned duties in upholding the IMO on appeal. The other defendants are not identified as NDCS employees, but all are alleged to have been serving in their professional capacities "for NDCS." (Filing 1, ¶¶ 12-16.)[4] Barber alleges that Dr. Hollister, Dr. Kasselman, and the IMHC were "acting under color of state law" (Filing 1, ¶¶ 39, 41),[5] and the functions they are alleged to have been performing for NDCS suggest this is true. "A private party is considered a state actor if the alleged deprivation was 'caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the state or by a person for whom the [s]tate is responsible.'" *Sabri v. Whittier All.*, 833 F.3d 995, 1000 (8th Cir. 2016) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). In *West*, for example, the Supreme Court found that a contractual relationship between a private medical provider and a state prison met the "acting under color of state law" requirement to subject the private provider to liability under § 1983. *See* 487 U.S. at 55; *see also Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (a private party may be characterized as a state actor for purposes of § 1983 when "the state has delegated to a private party a power traditionally exclusively reserved to the State,"

---

[4] "Defendants are not removed from the purview of § 1983 simply because they are professionals acting in accordance with professional discretion and judgment." *West.* 487 U.S. at 52.

[5] Although Barber alleges that the IMHC members acted under color of state law as a group, they may still be held personally liable for a constitutional violation. *See, e.g., Martin v. Kazulkina*, No. 12-CV-14286, 2017 WL 971706, at *12 (E.D. Mich. Feb. 21, 2017) ("Where a prisoner alleges that psychotropic medication was involuntarily administered in contravention of prison policy and his constitutional rights, and where that prison policy dictates that an involuntary medication order can only be obtained via a hearing committee decision, the members of the hearing committee are obviously and intimately involved in the decision to involuntarily administer medication, and the prisoner may seek relief against those committee members."), *report and recommendation adopted,* No. 12-CV-14286, 2017 WL 958081 (E.D. Mich. Mar. 13, 2017).

7

"where a private actor is a willful participant in joint activity with the State or its agents," and "where there is pervasive entwinement between the private entity and the state," with the ultimate conclusion turning on the particular facts of the case (internal quotation marks and citations omitted)).

In sum, Barber's Complaint sufficiently alleges that the defendants' actions were performed under color of state law, and that their actions resulted in the involuntary administration of psychotropic medication to Barber. Whether Barber's Complaint sufficiently alleges a constitutional violation will be examined next.

### 1. Fourteenth Amendment Claims

#### a. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

> Dissimilar treatment of dissimilarly situated persons does not violate equal protection. Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her. Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim.

*Id.* (citations omitted). "[E]qual protection claims [may be] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).[6]

---

[6] A "rational basis" test would also apply if Barber were to claim, for example, that the involuntary medication policy discriminates against mentally ill prisoners.

8

Although Barber claims he has been denied equal protection of the laws, a careful review of his Complaint discloses no allegations which suggest he has been treated differently from similarly situated prisoners. Thus, no viable equal protection claim is stated. *See, e.g., Mack v. Ricketts*, No. 8:17CV495, 2018 WL 4621741, at *10 (D. Neb. Sept. 26, 2018) (finding on initial review that prisoner's complaint alleged no facts to show dissimilar treatment).

### b. Due Process

Barber's Complaint does not expressly allege a due process violation, but this would appear to be the crux of his Fourteenth Amendment claim. The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. "This clause has two components: the procedural due process and the substantive due process components." *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)). "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim." *Id.* (cleaned up).

The Supreme Court has held that an inmate "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). However, the plaintiff's interest in refusing medication must be balanced against the state's legitimate and necessary interest in prison safety and security. *See Knight v. Hopkins*, No. 4:06CV3152, 2007 WL 4458939, at *8 (D. Neb. Dec. 14, 2007). This balancing test "permits the state to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is a danger to himself or others and the treatment is in the inmate's medical

---

*See Chrisco v. Scoleri*, No. 17-CV-00810-MEH, 2018 WL 3838493, at *8-10 (D. Colo. Aug. 13, 2018) (mentally ill prisoner was required to allege that involuntary medication policy was not reasonably related to a legitimate penological interest).

9

interest." *Harper*, 494 U.S. at 227.[7] "Under *Harper,* forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992).

The *Harper* Court also set forth four procedural protections that are the minimal constitutional requirements when a state involuntarily administers an antipsychotic drug to a prisoner: (1) notice; (2) the right to be present at an adversary hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses. *Id.* at 235; *see Doby v. Hickerson,* 120 F.3d 111, 113 (8th Cir. 1997).[8] A judicial hearing is not required; the hearing may be adjudicated by non-treating medical personnel. *Harper*, 494 U.S. at 231 ("Notwithstanding the risks that are involved, we conclude that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge."). Nor does due process require the inmate to be represented by an attorney; an inmate's rights may be sufficiently protected by a lay adviser familiar with the psychiatric issues involved. *Id.* at 236.

(i) Substantive Due Process

The constitutional right to substantive due process protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them. *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007). The "core of the concept [of substantive due process is] protection against arbitrary action" by

---

[7] "In *Harper,* the Supreme Court also held that Washington's policy for the involuntary medication of inmates comported with the requirements of Due Process. That policy allowed an inmate to be subjected to involuntary medication if he (1) suffers from a 'mental disorder' and (2) is 'gravely disabled' *or* poses a 'likelihood of serious harm' to himself, others, or their property. The disjunctive demonstrates that 'gravely disabled' does not include dangerousness." *Green v. Dormire*, 691 F.3d 917, 923 (8th Cir. 2012) (internal quotations and citations omitted).

[8] "Washington's policy for the involuntary administration of antipsychotic drugs … included: (1) a hearing; (2) a neutral and detached trier of fact; (3) notice; (4) the inmate's right to be present at the adversarial hearing; (5) the inmate's right to cross-examine witnesses; and, (6) the right to appeal." *Green*, 691 F.3d at 924.

the government. *Putnam v. Keller*, 332 F.3d 541, 547 (8th Cir. 2003) (quoting *Lewis,* 523 U.S. at 845). "[Supreme Court] cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense." *Id.* (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 128 (1992)); *see Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) ("Only in the rare situation when the state action is 'truly egregious and extraordinary' will a substantive due process claim arise (citation omitted)). "Only a purpose to cause harm *unrelated to the legitimate object of* the government action in question will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Mitchell v. Dakota Cty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020) (quoting *Folkerts v. City of Waverly*, 707 F.3d 975, 981 (8th Cir. 2013) (emphasis in original)). "Whether conduct shocks the conscience is a question of law." *Id.*; *Terrell v. Larson,* 396 F.3d 975, 981 (8th Cir.2005) (en banc).

"[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849 (citation omitted). "A substantive due process claim invariably 'demands an exact analysis of circumstances before any abuse of power is condemned." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006) (quoting *Lewis*, 523 U.S. at 850). "Whether conscience-shocking conduct has occurred is 'tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial.'" *Norris*, 494 F.3d at 638 (quoting *Lewis*, 523 U.S. at 850 (internal quotation marks and citations omitted)).

The court "may also consider conduct that evinces a 'deliberate indifference' to protected rights of [the plaintiff], if [the defendants] had an opportunity to consider other alternatives before choosing a course of action." *Putnam*, 332 F.3d at 548; *see Neal v. St. Louis County Bd. of Police Comm'rs,* 217 F.3d 955, 958 (8th

Cir. 2000) ("[W]here a state actor is afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, the chosen action will be deemed conscience shocking if the action was taken with deliberate indifference." (internal quotations omitted)).[9] *See also Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) ("The lower deliberate indifference standard 'is sensibly employed only when actual deliberation is practical.'" (quoting *Lewis*, 523 U.S. at 848-49).

The allegations of Barber's Complaint do not indicate that any defendant engaged in "conscience shocking" behavior. Barber alleges that Dr. Hollister and Dr. Kasselman "made allegations within their application for involuntary medication of misconduct by Barber that was not supported by evidence," and "[t]hey also made vague allegations … regarding Barber's mind state without actually inquiring into what Barber was thinking at the time of certain acts done by Barber." (Filing 1, ¶ 3.) More specifically, Barber alleges they had no evidence for claiming that he "has made 'bizarre grievances' against staff and inmates for stealing from him," "has had multiple misconduct reports," "is not eating or drinking appropriately because of his alleged delusions," "has thrown fluid on staff during 'potential' delusions about his canteen [food]," and has "slammed hatches and doors when upset about delusional concerns about peers who stole from him" (Filing 1, ¶¶ 18, 22, 23). Barber alleges that he never spoke with Dr. Hollister to be evaluated, and states that he refused to speak with Dr. Hollister because he did not know he was being considered for an IMO and was not informed that he was being evaluated. (Filing 1, ¶ 20.) Barber also alleges that "the involuntary medication hearing committee … included within the summary of witness statements a statement that was not actually stated at the hearing

---

[9] In *Van Orden v. Stringer*, 937 F.3d 1162 (8th Cir. 2019), *cert. denied sub nom. Orden v. Stringer*, 140 S. Ct. 1146 (2020), the State argued that "something more akin to an intent-to-harm standard may apply when officials, after deliberating, are forced to choose among competing, legitimate interests." *Id.* at 1170; s*ee Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 541-42 (6th Cir. 2008); *Matican v. City of New York*, 524 F.3d 151, 158-59 (2d Cir. 2008); *Schieber v. City of Philadelphia*, 320 F.3d 409, 419-20 (3d Cir. 2003). The Court of Appeals found it unnecessary to resolve the dispute over the applicable standard because the alleged actions of the defendant officials did not shock the conscience under the lesser "deliberate indifference" standard.

which substantially aided their decision to initiate the IMO." (Filing 1, ¶ 4.) The IMHC allegedly "add[ed] that Mr. Barber has suicidal thoughts, according to Dr. Hollister's testimony," but Barber alleges he "never expressed to Dr. Hollister that he had suicidal thoughts, nor did Dr. Hollister allege that this was so at the hearing." (Filing 1, ¶ 33.) Apart from upholding the IMHC's decision on appeal, Director Frakes is not alleged to have engaged in any misconduct.

The unsupported and vague allegations that Dr. Hollister and Dr. Kasselman allegedly made while applying for the IMO could be attributed to mere negligence, which "can never be conscience-shocking and cannot support a claim alleging a violation of substantive due process rights." *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005); *see also Davis v. White*, 794 F.3d 1008, 1015 (8th Cir. 2015) ("In an extreme case, a police officer's intentional or reckless failure to investigate before making a complaint can support a substantive due process claim, but neither negligent nor grossly negligent failure to investigate amounts to a constitutional violation."). Similarly, the IMHC's alleged inclusion of non-existent testimony in its record may have been unintentional. *See Mitchell*, 959 F.3d at 899 ("A false evidence claim requires proof that the investigators deliberately fabricated evidence …." (citations omitted)).

### (ii) Procedural Due Process

The only procedural irregularity alleged in Barber's Complaint is that he "was not allowed to question and cross-examine any alleged witnesses who gave the applicants reason to apply for an IMO." (Filing 1, ¶ 32.) While the *Harper* decision gives prisoners the right to cross-examine witnesses who testify at the involuntary medication hearing, the court is not aware of any authority which holds there is a right to confront or examine non-testifying witnesses.

### 2. Eighth Amendment Claim

A prisoner may state a viable Eighth Amendment claim when medication is administered forcibly for a penological purpose. *See Knecht v. Gillman*, 488 F.2d 1136, 1139 (8th Cir. 1973). In *Knecht*, the drug apomorphine had been administered

to mental institution inmates as "aversive stimuli" in the treatment of inmates with behavior problems. "The drug was administered by intra-muscular injection by a nurse after an inmate had violated the behavior protocol established for him by the staff. …[T]he drug could be injected for such pieces of behavior as not getting up, for giving cigarettes against orders, for talking, for swearing, or for lying. Other inmates or members of the staff would report on these violations of the protocol and the injection would be given by the nurse without the nurse or any doctor having personally observed the violation and without specific authorization of the doctor." *Id*. at 1137. "When it was determined to administer the drug, the inmate was taken to a room near the nurses' station which contained only a water closet and there given the injection. He was then exercised and within about fifteen minutes he began vomiting. The vomiting lasted from fifteen minutes to an hour." *Id.* The Eighth Circuit directed that the involuntary use of this purported "treatment" be enjoined, stating:

> Here we have a situation in which an inmate may be subjected to a morphine base drug which induces vomiting for an extended period of time. Whether it is called "aversive stimuli" or punishment, the act of forcing someone to vomit for a fifteen minute period for committing some minor breach of the rules can only be regarded as cruel and unusual unless the treatment is being administered to a patient who knowingly and intelligently has consented to it.… The use of this unproven drug for this purpose on an involuntary basis, is, in our opinion, cruel and unusual punishment prohibited by the eighth amendment.

*Id*. at 1139-40.

Barber's situation is significantly different from that presented in *Knecht*. Before being administered Haldol, Barber was diagnosed with "schizoaffective disorder, bipolar type, multiple episodes, currently in acute episode." With the possible exception of the "currently acute" assessment, Barber does not dispute this diagnosis. Haldol is an antipsychotic drug indicated for the treatment of mental disorders such as schizophrenia. *Pashia v. Berryhill*, No. 4:16 CV 1267 ACL, 2017 WL 4310433, at *6 n. 3 (E.D. Mo. Sept. 28, 2017) (citing WebMD, http://www. webmd.com/drugs). In *Knecht*, by contrast, the drug apomorphine was found to have

14

no proven therapeutic value and its use was not recognized as acceptable medical practice. 488 F.2d at 1138, 1140. *See Rennie v. Klein*, 462 F. Supp. 1131, 1143 (D.N.J. 1978) (distinguishing *Knecht* in case involving involuntary administration of psychotropic drugs). In addition, "while the behavior modification program [at issue in *Knecht*] was believed to have long-term benefits, the adverse effects seemed unnecessarily harsh." *Id.* The only side effect Barber allegedly has experienced from Haldol is "some depression," for which he is receiving anti-depressant medication. (Filing 1, ¶ 36.) It is alleged that "[a]s a direct result of this depression, Barber does not have the energy to exercise regularly as he had enjoyed before the IMO" and "also doesn't enjoy reading books or doing legal studies as he had enjoyed before the IMO" (Filing 1, ¶ 37), but these are not "unnecessarily harsh" consequences of the Haldol treatment. *See id.* ("While the side effects of prolixin are serious, they are not unnecessarily harsh in light of the potential benefits.").

Involuntary medication cases in which Eighth Amendment claims have been raised are relatively scarce, but these claims tend to be analyzed as involving either deliberate indifference to an inmate's serious medical needs or else the application of excessive force.[10] A case within the first category is *Roberson v. Goodman*, 293 F. Supp. 2d 1075 (D.N.D. 2003), *aff'd*, 114 F. App'x 772 (8th Cir. 2004), in which a state prison inmate brought a § 1983 action against a psychiatrist, alleging that

---

[10] "The Supreme Court has not directly addressed whether involuntarily medicating an inmate could run afoul of the Eighth Amendment's Cruel and Unusual Punishment clause…. A few courts have attempted to apply the framework of deliberate indifference to claims of involuntarily administered psychotropic medication. These decisions tend to focus on the side effects of the psychotropic medication rather than the justification for their use in the first place…. Other courts have concluded that allegations of involuntary medication ought not be viewed through the lens of the Eighth Amendment at all…. A third group of cases have concluded that involuntary application of psychotropic medication could run afoul of the Eighth Amendment. These cases tend to focus on the motive behind the use of psychotropic medication, and consider whether the prisoner has made a colorable claim that medication was administered for the purpose of causing harm, *i.e.* under the rubric of excessive force rather than deliberate indifference." *Martin v. Kazulkina,* 2017 WL 971706, at *13-14 (citing cases).

forced administration of Haldol had resulted in memory loss, confusion, migraines, and other side effects. The district court summarized the applicable law as follows:

> It is well-established that the Government is obligated to provide medical care for those who are being punished by incarceration. "The Eighth Amendment scrutinizes the conditions under which prison inmates are confined in order to prevent the inhumane treatment of inmates." *Robinson v. Hager,* 292 F.3d 560, 563 (8th Cir.2002) *citing Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. "To prevail on an Eighth Amendment claim, an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir.1997); *Choate v. Lockhart,* 7 F.3d 1370, 1373 (8th Cir.1993). In a case alleging a deprivation of medical care, an inmate must show that the prison official acted with deliberate indifference to the inmate's serious medical needs. *Camberos v. Branstad,* 73 F.3d 174, 175 (8th Cir.1995).

> In order to find a prison official liable for a deliberate indifference claim, an inmate is required to show that 1) there existed a substantial risk of serious harm to the inmate, and 2) that the prison official knew of and disregarded that need. *Robinson v. Hager,* 292 F.3d 560, 564 (8th Cir.2002); *Miller v. Schoenen,* 75 F.3d 1305, 1309 (8th Cir.1996) *citing Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference may be demonstrated by prison doctors who fail to respond to a prisoner's serious medical needs. *Id.* However, it is well-established that mere negligence or medical malpractice are insufficient to rise to an Eighth Amendment violation. *Roberson v. Bradshaw,* 198 F.3d 645 (8th Cir.1999). Thus, a claim of deliberate indifference to an inmate's serious medical needs requires that the plaintiff meet a higher burden of proof than is required in a mere negligence claim.

*Id.* at 1080. The district court granted summary judgment in favor of the defendant, finding it was undisputed that the plaintiff suffered from a psychotic disorder with prominent paranoia for which he was being treated, and that he had not produced any competent evidence (*i.e*., expert medical testimony) to show that there existed a

substantial risk of serious harm due to side effects. *Id.* at 1080-81. The court also found no evidence of deliberate indifference, stating:

> Even assuming for the sake of argument that [the plaintiff's] psychotic disorder constituted an "objectively serious medical need", *or* that he has suffered or will suffer adverse side effects from the administration of anti-psychotic medications, [he] has also clearly failed to present any evidence that [the defendant] was deliberately indifferent to his medical needs. To satisfy this subjective element, there is a need for a finding of actual knowledge on the part of the defendant. The Eighth Circuit has held that a prison official may be held liable under the Eighth Amendment if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Coleman v. Rahija,* 114 F.3d 778, 785 (8th Cir.1997). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir.1996). It is well-established in the Eighth Circuit that the mere fact that an inmate disagrees with the course of treatment does not, in and of itself, suffice to allege a serious medical need to which prison officials were deliberately indifferent. *See Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir.1994).

> [The plaintiff] has wholly failed to produce any evidence to establish knowledge of a serious medical need that poses a substantial risk of serious harm to him *and* actual deliberate indifference to that need on the part of [the defendant].

*Id.* at 1081-82 (emphasis in original).

While the *Roberson* decision turned on a lack of evidentiary support, in the present case there are not sufficient facts alleged in Barber's Complaint to show the existence of either required component of an Eighth Amendment claim based on his medical needs. Barber alleges that he has been diagnosed with depression, but also alleges he has received treatment for this condition. He, of course, has also received

treated for a diagnosed psychotic disorder.[11] There are no facts alleged to show that any defendant deliberately disregarded a serious medical need. In short, Barber has not sufficiently alleged deliberate indifference. *See, e.g., Madsen v. United States*, No. C17-5218 RBL-DWC, 2017 WL 1652983, at *3 (W.D. Wash. May 2, 2017) ("Plaintiff has not alleged a single fact to demonstrate any individual acted with the requisite 'culpable state of mind,' nor has he provided sufficient facts regarding the inadequacy of his treatment. Instead, Plaintiff alleges that the treatment was involuntary rather than inadequate. Therefore, Plaintiff's claim is more appropriately analyzed under the Fourteenth Amendment's Due Process Clause."); *Bomprezzi v. Kaprivnikar*, No. 11-CV-03344-REB-MEH, 2012 WL 7763089, at *4 (D. Colo. Aug. 3, 2012) (prisoner's alleged reaction to antipsychotic medication, including anxiety, suicidal thoughts, discouragement, drowsiness, hunger, and sensitivity to noise, was not sufficiently serious to satisfy the objective component of an Eighth Amendment claim), *report and recommendation adopted*, No. 11-CV-03344-REB-MEH, 2013 WL 1124820 (D. Colo. Mar. 18, 2013), *as amended* (Jan. 22, 2014); *Elam v. Hernandez*, No. CV 09-02780-PA DTB, 2011 WL 2785676, at *6 (C.D. Cal. May 5, 2011) ("Plaintiff alleges only that his [psychotropic] treatment was involuntary rather than inadequate. Neither a difference of opinion about the proper course of treatment nor a dispute over the necessity for or extent of medical treatment amounts to deliberate indifference."), *report and recommendation adopted*, No. CV 09-2780-PA DTB, 2011 WL 2838183 (C.D. Cal. July 12, 2011).

When considering excessive force claims, the core judicial inquiry is whether the defendant acted "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). The facts alleged in Barber's Complaint do not suggest that any defendant acted with this intent. Consequently, Barber's Complaint also fails to state an actionable claim under an "excessive force" theory. *See, e.g, Chrisco v. Scoleri*, No. 17-CV-00810-MEH, 2019 WL 1254941, at *7-8 (D. Colo. Mar. 19, 2019) ("prisoner's allegations that involuntary administration of medication was done "without justification and with the very intent of causing harm" were conclusory and did not allege that

---

[11] Notably, the Eighth Circuit has also stated that when the state is under an obligation to administer antipsychotic medication, "any additional motive or effect is irrelevant." *Singleton v. Norris*, 319 F.3d 1018, 1027 (8th Cir. 2003).

defendant acted "maliciously and sadistically."); *Carter v. Koprivnikar*, No. 15-CV-00435-KLM, 2016 WL 950125, at *3 (D. Colo. Mar. 14, 2016) ("Plaintiff makes no allegation that Defendant acted out of malice in an attempt to cause harm, and instead only alleges that Defendant submitted a report recommending involuntary medication for 'disciplinary purposes' and that, because the report was falsified, such a measure was unwarranted…. Such allegations relate to the appropriateness of the disciplinary action taken and do not implicate the Eighth Amendment.").

In summary, Barber has not sufficiently alleged that the IMO constitutes cruel and unusual punishment. The Amended Complaint fails to show that the defendants were deliberately indifferent to a serious medical need, or that they acted maliciously and sadistically to cause harm.

### 3. First Amendment Claim

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman*, 547 U.S. at 256). "To prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (emphasis in original; internal quotation marks and citation omitted).

Liberally construing Barber's allegations, he is asserting a First Amendment retaliation claim against all defendants. "To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [Barber] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against

him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). "In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in the protected speech." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012) (quoting *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for 'the exercise of a constitutionally protected right.'" *Spencer v. Jackson Cty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Cody v. Weber,* 256 F.3d 764, 771 (8th Cir. 2001)).

On the facts alleged in Barber's Complaint, the first element (*i.e*., protected activity) is satisfied here. "A prisoner's right under the First Amendment to petition for redress of grievances under a prison's grievance procedures is clearly established in this [circuit]." *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010) (citing *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989)). "Similarly, it has for over [thirty] years been the law of this circuit that actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983." *Id.*

The second element is also met, at least for purposes of initial review. The IMO may constitute an "adverse action," and it may reasonably be concluded that an ordinary person in Barber's position would be deterred from filing grievances after being forced to receive monthly Haldol injections. *See, e.g., L.L. Nelson Enterprises, Inc. v. Cty. of St. Louis*, 673 F.3d 799, 809 (8th Cir. 2012) (noting that "even the selective issuance of parking tickets to a complaining citizen" was held to support a jury's finding of unlawful retaliation in *Garcia v. City of Trenton,* 348 F.3d 726, 729 (8th Cir. 2003)).[12]

---

[12] "[I]n most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bennie v. Munn*, 822 F.3d 392, 398 (8th Cir. 2016) (quoting *Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir. 2002)). "Except when the alleged harassment is so inconsequential that even allowing a claim would trivialize the First Amendment, … the determination of whether government action would chill an

While at first glance it might appear that the third element (*i.e.*, causation) is also satisfied for pleading purposes,[13] because it is alleged that Barber's grievances were cited as a reason for the issuance of the IMO, on closer examination it becomes clear that the facts alleged do not show that the defendants actions were motivated by the protected activity itself. Rather, it appears from the face of the Complaint that the defendants acted, in part, because they concluded from the grievances that Barber was displaying delusional behavior in claiming that his property was being stolen and his food was being tampered with.

In this regard, the present case is very similar to *Oliver v. Roquet*, 858 F.3d 180 (3d Cir. 2017), where it was alleged that "a state-employed medical professional charged with assessing the clinical progress of a civilly committed sexually violent predator considered this detainee's First Amendment activities in connection with her recommendation that he not advance to the next phase of his treatment program." *Id.* at 184. The detainee alleged that he was retaliated against "for his participation in legal activities of two general types—those he conducted on his own behalf, and those he conducted on behalf of other STU [Special Treatment Unit] residents." *Id.* at 186. On interlocutory appeal from the district court's denial of the medical professional's motion to dismiss the detainee's retaliation claim based on qualified immunity, the Third Circuit reversed and remanded with directions to dismiss the claim, stating: "Because the detainee has pleaded facts reflecting that the medical professional based her recommendation on the medically relevant collateral consequences of his protected activity, but has not sufficiently pleaded that the recommendation was based on the protected activity itself, the detainee has not alleged the necessary causation to state a prima facie case of retaliation." *Id.* at 184-85. The Court of Appeals explained:

---

ordinary person's speech is a matter for the factfinder." *Id.* at 399 n.1 (internal quotation marks omitted).

[13] Causation is also a matter for the factfinder. *Cf. Beaulieu*, 382 F.3d at 876 ("Although '[t]he causal connection is generally a jury question, ... it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury.'" (quoting *Revels*, 382 F.3d at 876)).

Mindful of the differences between the incarcerated and the civilly confined, we are nonetheless persuaded that prisoner retaliation actions are an appropriate starting point for our analysis of the elements of Oliver's cause of action….

To state a First Amendment retaliation claim, a prisoner plaintiff must allege (1) "that the conduct which led to the alleged retaliation was constitutionally protected"; (2) "that he suffered some 'adverse action' at the hands of the prison officials"; and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him," or more specifically, "that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take that action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).[14] Once the prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that it "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id*. at 334.

In this case, the parties dispute what is required under the causation prong of the *Rauser* test and whether Oliver has alleged facts giving rise to the inference that his protected activity was a "substantial or motivating factor" in the decision not to advance him. The challenge here is that, although Oliver makes the conclusory allegation in his complaint that he suffered an adverse action based on his protected

---

[14] The Third Circuit "derived the *Rauser* framework, in significant part, from *Mount Healthy Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court's decision on retaliation claims arising in the public employment context." *Oliver*, 858 F.3d at 191. The Eighth Circuit has not adopted this less stringent, burden-shifting framework for prisoner retaliation claims. *See Rauser*, 241 F.3d 330, 333 n. 2 (3d Cir. 2001) (citing *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993)). "[W[hile acknowledging *Mount Healthy,* [the Eighth Circuit] has consistently applied the "but for" standard in cases involving a prisoner's claim of impermissible retaliatory transfer by prison officials rather than applying a burden-shifting analysis." *Goff*, 7 F.3d at 737-38; *see Spencer*, 738 F.3d at 912 ("In addition to proving the other elements of retaliation, [the prisoner] must prove that he would not have been transferred 'but for an unconstitutional, retaliatory motive.'" (quoting *Goff,* 7 F.3d at 738)).

activity, the facts that Oliver alleges to support that causal link are drawn from the TPRC [Treatment Progress Review Committee] Report, and nothing in the Report—which we may consider in its entirety in this context as a "document integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted)—suggests that Oliver's litigation activity itself was the basis of Roquet's recommendation. Rather, on its face, the Report reflects that, to the extent Roquet considered Oliver's litigation activity in recommending against his advancement, it was only to note that certain problematic behaviors on which the recommendation was based—including Oliver being distracted from his treatment, his manipulative behavior, and his hostile relationship with STU staff—manifested themselves in Oliver's litigation activities.

Oliver does not argue that it was impermissible for Roquet to base her recommendation on those behaviors; instead, his argument seems to be that because the Report reflects that Roquet identified his litigation activity as associated with those behaviors, Oliver has sufficiently pleaded causation. In other words, Oliver contends that by alleging a medical professional considered protected activity at all, even if only as a symptom of or giving rise to medically relevant behaviors, a plaintiff can satisfy *Rauser*'s causation prong at the pleading stage. That cannot be, and is not, the law.

*Id.* at 189-91 (footnotes omitted). After reviewing applicable pleading standards, the Court of Appeals continued:

With these standards in mind, it is clear that, in the context of a retaliation claim against a mental health professional at a state institution, a prima facie showing of causation requires more than the allegation that the professional based a medical decision on symptomology that happened to relate in some way to a patient's protected activity. There must be particular facts alleged that allow the court to reasonably infer it is the protected activity itself, and not simply medically relevant behavior associated with that activity, that formed the basis of the defendant's adverse action. This is so because a medical professional's holistic approach to diagnosing a patient's mental health will sometimes require consideration of his otherwise protected speech

23

and conduct to evaluate any adverse consequences they are having on his treatment. Framed in terms of the *Rauser* test and the relevant pleading standards, an assertion by a mental health detainee that his treating psychologist retaliated against him, based only on the factual allegation that the psychologist considered the effect his First Amendment activity was having on his treatment, would not support the inference that retaliation was the "substantial or motivating factor" for the psychologist's recommendation.

*Id.* at 192. Needless to say, such an allegation would also fail to support an inference that retaliation was the "but for" cause for the recommendation, which is the standard applied to prisoner retaliation claims in the Eighth Circuit. *See* note 14, *supra*.

"Barber claims in this matter that Defendants wrongfully placed him on an IMO, as it was done on the basis that Barber made complaints via the grievance system of theft by staff and inmates of certain items from his cell and possible misconduct having to do with tampering with Barber's food, causing Barber to become sick in a manner which included several symptoms" and "on the basis that Barber would only eat canteen foods and would not eat at the chow hall." (Filing 1, ¶ 2.) Barber concludes "[t]his IMO was applied for, ordered, and upheld on the basis of … disregard for Barber's right to grieve any issue that he is having within the department, and Barber's right to eat only canteen. Barber believes that this IMO was done in order to cover up misconduct by staff and inmates, and to deter Barber from standing up for himself by grieving such misconduct." (Filing 1, ¶ 35.) "By applying for the initiation of an IMO … on the basis that Barber grieved issues via NDCS grievance procedure, which is his right, … Dr. Hollister and Dr. Kasselman … [allegedly] deprived Barber of his right to freedom of speech, …." (Filing 1, ¶ 39.) "By ordering the initiation of involuntary medication … the IMHC … [allegedly] deprived Barber of his right to freedom of speech, …." (Filing 1, ¶ 40.) "By upholding the order to initiate involuntary medication … where Barber has the right to grieve his concerns …, Frakes [allegedly] deprived Barber of the right to freedom of speech, …." (Filing 1, ¶ 41.)

According to Barber's Complaint, "[t]he applicants, Dr. Hollister and Dr. Kasselman, alleged that Barber presents with delusional and paranoid thought

24

process. They alleged that Barber has made 'bizarre grievances' against staff and inmates for stealing from him." (Filing 1, ¶ 18.) Barber alleges he spoke with Dr. Hollister on November 19, 2019 [six days after the hearing] about these complaints. Dr. Hollister stated, after an explanation from Barber, that he believed that writing grievances regarding theft was reasonable, but he (Dr. Hollister) thought they were bizarre because staff did not understand the written grievances. Dr. Hollister stated that the grievances were legible and that he could understand them. But since Barber was previously having complaints that landed him on IMO in October of 2016 regarding theft, Dr. Hollister concluded that the current allegations were due to Barber experiencing delusions." (Filing 1, ¶ 26.)

Barber's factual allegations fail to that show the IMO was applied for, issued, and upheld on the basis that he engaged in protected conduct by filing grievances about theft or food tampering. Rather, it appears from these allegations that the defendants acted because the grievances were thought to demonstrate that Barber was delusional and paranoid. The court is not required to accept the truth of Barber's conclusory allegations that that defendants' actions were retaliatory in nature. *See Twombly*, 550 U.S. at 555 (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While Barber may genuinely believe that the defendants deprived him of his right to free speech, the facts alleged do not support this claim.

## IV. CONCLUSION

The court finds upon initial review that Barber's Complaint fails to state a claim upon which relief may be granted, but the court will permit him to file an amended complaint within 30 days. If an amended complaint is not filed within 30 days, the case may be dismissed without further notice. If an amended complaint is filed, the court will conduct another initial review.[15]

---

[15] Plaintiff has today filed a motion to amend complaint (Filing 9), which will be denied as moot since the court is granting leave to amend on its own motion. For future reference, Plaintiff is advised that the court's local rules require that a copy of the proposed amended pleading be attached to the motion. *See* NECivR 15.1.

IT IS THEREFORE ORDERED:

1.     On the court's own motion, Plaintiff shall have 30 days in which to file an amended complaint.

2.     Failure to file an amended complaint within 30 days will result in the court dismissing the case without prejudice, and without further notice to Plaintiff.

3.     If Plaintiff files an amended complaint, he shall restate the allegations of the Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

4.     The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

5.     The Clerk of the Court is directed to set the following pro se case management deadline: **November 12, 2020**, check for amended complaint.

6.     Plaintiff's motion to amend complaint (Filing 9) is denied without prejudice, as moot.

Dated this 13th day of October, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

26