FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
2022 JUN 27 AM 11: 25
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RAYSEAN BARBER, | ) | 8:20CV282 |
| Plaintiff, | ) | |
| v. | ) | FOURTH AMENDED COMPLAINT |
| SCOTT FRAKES; DR. BRANDON HOLLISTER and HIS EMPLOYER; DR. JEFFREY KASSELMAN and HIS EMPLOYER; DR. SEAN THOMAS and HIS EMPLOYER; DR. CYNTHIA POLAGE and HER EMPLOYER; DR. JEFF MELVIN and HIS EMPLOYER; DR. NATALIE BAKER and HER EMPLOYER; DR. MERIDITH GRIFFIN and HER EMPLOYER; DR. AGNES STAIRS and HER EMPLOYER; DR. SEAN SEARS and HIS EMPLOYER; DR. JASON OURADA and HIS EMPLOYER; DR. YVONNE WESTOVER and HER EMPLOYER; DR. SARAH HOFF and HER EMPLOYER; DR. DOUGLAS MORIN and HIS EMPLOYER; DR. NICK GUENZEL and HIS EMPLOYER; DR. JHONNA WILLIAMS and HER EMPLOYER; DIANE SABATKA-RINE; and DR. HARBANS DEOL and HIS | ) | |

-1-

```
EMPLOYER,                         )
        Defendants.               )
```

JURY TRIAL DEMANDED

## FOURTH AMENDED COMPLAINT

Plaintiff, RaySean Barber ("Barber"), individually, as and for his Fourth Amended Complaint, based on his knowledge, understanding, and experience, states as follows:

### INTRODUCTION

1. Barber is an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS"). He is housed at Omaha Correctional Center ("OCC") in Omaha, Nebraska.

2. Barber brings this action against Scott Frakes, in his individual cacity for monetary damages, and in his official capacity for declaratory and injunctive relief. All other defendants are being sued in their individual capacity for monetary damages, including all medical-Defendants' employers -- to the extent that they are contracted through a non-state agency to NDCS for psychiatric or medical services -- pursuant to the doctrine of respondeat superior, for the purposes of the malpractice claims.

3. In this matter, Barber seeks redress for Defendants placing him on an involuntary medication order ("IMO") while disregarding current medical standards and the departments involuntary medication procedures ("IMP"), thus misdiagnosing Barber as

-2-

being seriously mentally ill and dangerous.

4. Defendants' decision to apply for and order an IMO against Barber while disregarding current medical standards respecting diagnosing a patient with a mental disorder and deeming him dangerous was a deviation of the generally recognized medical standard of care that Barber was due in such a situation.

5. In addition, Scott Frakes ("Frakes") and Diane Sabatka-Rine ("Sabatka-Rine") personally upheld the IMO on the basis of the medical evidence, and thus they were personally involved in the decision to place Barber on an IMO, making them liable in this action as well.

6. Dr. Harbans Deol ("Dr. Deol") also ordered that Barber be placed on a continued IMO without being involved in the IMO process.

7. Defendants thereby committed malpractice against Barber and violated his constitutional right to be free of the unwanted and unwarranted forced administration of psychotropic medications on him.

## EXHAUSTIOIN OF REMEDIES

8. Barber has exhausted his administrative remedies by appealing the IMO to Frakes or his designee.

## JURISDICTION AND VENUE

9. This action arises pursuant to U.S.C. §1983 for the violation of rights secured by the U.S. Constitution. In addition, Barber brings this action pursuant to Neb.Rev.Stat. §25-208 for the committance of malpractice by Defendants. Furthermore, the acts herein complained of occurred while Barber was housed at Tecumseh State Correctional Institution ("TSCI") in Tecumseh, Nebraska; Lincoln Correctional Center ("LCC"), in Lincoln, Nebraska; and OCC, in Omaha Nebraska and, therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, and this is proper venue pursuant to 28 U.S.C. §1391.

## NAMED PARTIES

### PLAINTIFF

10. RaySean Barber is 33 years old, resides in Omaha, Nebraska, and is housed at OCC.

### DEFENDANTS

11. Scott Frakes was the director of NDCS at the time of the incidents herein complained of.

12. Dr. Brandon Hollister was a psychologist for NDCS at the time of the incidents herein complained of. To the extent that he was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

13. Dr. Jeffrey Kasselman was a physician for NDCS at the time

of the incidents herein complained of. To the extent that he was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

14. Dr. Sean Thomas was a psychologist for NDCS at the time of the incidents herein complained of. To the extent that he was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

15. Dr. Cynthia Polage was a nurse practitioner for NDCS at the time of the incidents herein complained of. To the extent that she was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

16. Dr. Jeff Melvin was a psychologist for NDCS at the time of the incidents herein complained of. To the extent that he was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

17. Dr. Natalie Baker was a psychiatrist for NDCS at the time of the incidents herein complained of. To the extent that she was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

18. Dr. Meridith Griffin was a psychologist for NDCS at the time of the incidents herein complained of. To the extent that she was contracted to NDCS by another company, which is unknown to Barber

at this time, that company is being sued as well.

19. Dr. Agness Stairs was a psychologist for NDCS at the time of the incidents herein complained of. To the extent that she was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

20. Dr. Sean Sears was a psychologist for NDCS at the time of the incidents herein complained of. To the extent that he was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

21. Dr. Jason Ourada was a medical doctor for NDCS at the time of the incidents herein complained of. To the extent that he was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

22. Dr. Yvonne Westover was a psychologist for NDCS at the time of the incidents herein complained of. To the extent that she was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

23. Dr. Sarah Hoff was a psychologist for NDCS at the time of the incidents herein complained of. To the extent that she was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

24. Dr. Douglas Morin was a physicians assistant for NDCS at the time of the incidents herein complained of. To the extent that he was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

25. Dr. Nick Guenzel was a nurse practitioner for NDCS at the time of the incidents herein complained of. To the extent that he was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

26. Dr. Johnna Williams was a psychologist for NDCS at the time of the incidents herein complained of. To the extent that she was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

27. Diane Sabatka-Rine was the designee for the director for the purpose of the IMO appeal at the time of the incidents herein complained of.

28. Dr. Harbans Deol was the director of the NDCS medical department at the time of the incidents herein complained of. To the extent that he was contracted to NDCS by another company, which is unknown to Barber at this time, that company is being sued as well.

## FACTS

29. Current medical standards for diagnosis of a mental disorder

and psychiatric examination can be found in the Diagnostic and Statistical Manual of Mental Disorders, Volume 5 ("DSM-5") and the comprehensive textbook of psychiatry, 10th edition.

30. The IMP are the procedures required to be used when an NDCS inmate is being considered for an IMO; it includes, among other things, the definitions required to be used in order for the officials involved to determine that an inmate poses a risk of serious harm or is gravely diabled. The IMP can be found in NDCS Administrative Regulations ("AR") 115.12, attachment D.

### NOVEMBER 2019 IMO PROCEEDING

31. On November 11, 2019, Dr. Brandon Hollister and Dr. Jeffrey Kasselman applied to initiate an IMO on Barber, diagnosing him with schizoaffective disorder, bipolar type, multiple episodes, currently in acute episode, and deeming him dangerous as a result of the mental disorder.

32. In diagnosing Barber, they departed from prevailing and current medical standards and the department's IMP, resulting in the misdiagnosis of the mental disorder.

33. On November 18, 2019, a hearing was conducted on the application. The involuntary medication hearing committee ("IMHC") consisted of three of the defendants: Dr. Sean Thomas, Dr. Cynthia Polage, and Dr. Jeff Melvin. In finding that Barber was mentally ill and dangerous, they departed from prevailing and

current medical standards, and the department's IMP, resulting in the misdiagnosis of the mental disorder.

34. Barber appealed the IMO decision to Frakes, who upheld the decision on the basis that the "IMO Committee's determination ... is supported by the record ..." on November 22, 2019.

## MAY 2020 IMO PROCEEDING

35. On May 8, 2020, Dr. Natalie Baker and Dr. Meridith Griffin applied to continue the IMO, diagnosing Barber with delusional disorder, persecutory/somatic type, and ETOH use disorder, and deeming him dangerous as a result of the mental disorder.

36. In diagnosing Barber, they departed from prevailing and current medical standards, and the department's IMP, resulting in the misdiagnosis of the mental disorder.

37. On May 12, 2020, a hearing was conducted on the application. The IMHC consisted of three of the defendants: Dr. Jeff Melvin, Dr. Cynthia Polage, and Dr. Agnes Stairs. In finding that Barber was mentally ill and dangerous, they departed from prevailing and current medical standards, and the department's IMP, resulting in the misdiagnosis of the mental disorder.

38. Barber appealed the IMO decision to Frakes, who upheld the decision on the basis that "Mr. Barber does not believe he has a mental illness and has refused to take his psychoactive medi-

cations voluntarily ..." on May 14, 2020.

OCTOBER AND NOVEMBER 2020 AND APRIL AND MAY 2021 IMO PROCEEDINGS

39. On October 29, 2020, and April 21, 2021, Dr. Sean Sears and Dr. Jason Ourada applied to continue the IMO, diagnosing Barber with delusional disorder, and deeming him dangerous as a result of the mental disorder.

40. In diagnosing Barber, they departed from prevailing and current medical standards, and the department's IMP, resulting in the misdiagnosis of the mental disorder.

41. On November 5, 2020, and April 28, 2021, a hearing was conducted on the applications. The IMHC consisted of three of the defendants: Dr. Yvonne Westover, Dr. Sarah Hoff, and Dr. Douglas Morin. In finding that Barber was mentally ill and dangerous, they departed from prevailing and current medical standards, and the department's IMP, resulting in the misdiagnosis of the mental disorder.

42. Barber appealed the IMO decision for the former proceeding to Frakes, who upheld the decision on the basis that the "IMO committee's determination ... is supported by the record ..." on November 13, 2020.

43. Barber appealed the IMO decision for the latter proceeding to Frakes; Sabatka-Rine upheld the IMO decision on the basis that

the "IMO committee's determination ... is supported by the record ..." on May 5, 2021.

OCTOBER 2021 AND MARCH TO APRIL 2022 IMO PROCEEDINGS

44. On October 13, 2021 and March 29, 2022, Dr. Sarah Hoff and Nick Guenzel applied to continue the IMO, diagnosing Barber with delusional disorder, and deeming him dangerous as a result of the mental disorder.

45. In diagnosing Barber, they departed from prevailing and current medical standars, and the department's IMP, resulting in the misdiagnosis of the mental disorder.

46. On October 20, 2021 and April 11, 2022, a hearing was conducted on the application. The IMHC for the former hearing consisted of three of the defendants: Dr. Jeff Melvin, Dr. Johnna Williams, and Dr. Douglas Morin. The IMHC for the latter hearing also consisted of three of the defendants: Dr. Jeff Melvin, Dr. Sean Sears, and Dr. Douglas Morin. In finding that Barber was mentally ill and dangerous, they departed from prevailing and current medical standards, and the department's IMP, resulting in the misdiagnosis of the mental disorder.

47. Barber appealed the IMO decision for the former proceeding to Frakes; Sabatka-Rine upheld the decision on the basis that the "IMO committee's determination ... is supported by the record ..." on October 25, 2021.

48. Barber appealed the IMO decision for the latter proceeding to Frakes, who upheld the decision on the basis that the "IMO committee's determination ... is supported by the record ..." on April 14, 2022.

49. Dr.Deol ordered the continuation of the IMO by signing the order with the IMHC of the latter proceeding. He was not present as an IMHC member to the hearing and was not present at all during these proceedings.

## DAMAGES OCCURRED AS A PROXIMATE RESULT OF THE IMO

50. As a proximate result of the involuntary Haldol injection, Barber's mental and physical functioning became impaired. His way of life was therefore significantly adversely affected. The medication has caused a depression in his motivation, drive, and energy, causing a significant decrease in his daily recreational and liesure-time activities. This, in turn, caused significant weight gain and has caused other harmful affects.

51. As a proximate result of the involuntary Haldol injection's side effects Barber must take additional psychotropic medications (Venlafaxine 75 mg) voluntarily in order to circumvent the side effects of the Haldol injection (which, it isn't having any affect against the Haldol medication).

52. As a proximate result of the involuntary medication order, Barber was prevented from going to work release in late 2021.

CAUSE OF ACTION NO. 1

53. The Applicant-Defendants diagnosed Barber with a mental illness and deemed him dangerous by departing from the current medical standards and the IMP, thus misdiagnosing him as mentally ill and dangerous where no mental illness or dangerousness actually existed. They, therefore, failed to exercise professional judgment, and, thus, violated Barber's right to substantive due process, causing action pursuant to 42 U.S.C. §1983.

54. The IMHC-Defendants found that Barber is mentally ill and dangerous by departing from current medical standards and the IMP, thus misdiagnosing him as mentally ill and dangerous where no mental illness or dangerousness actually existed. They, therefore, failed to exercise professional judgment, and, thus, violated Barber's right to substantive due process, causing action pursuant to 42 U.S.C §1983.

55. Frakes and Sabatka-Rine upheld the IMO decision based on the medical determinations of the IMHC. They do not have a license to practice psychiatry, and thus they are not legally qualified to make such determinations. In addition, the IMO decision violated Barber's substantive due process rights, in that the medical-Defendants failed to use professional judgment by failing to adhere to prevailing and current clinical standards in determining that Barber is mentally ill and dangerous. Therefore, in personally upholding the IMO decision, Frakes and Sabatka-Rine also violated Barber's substantive due process

-13-

rights, thus causing action pursuant to 42 U.S.C §1983.

56. Dr. Deol approved the continuation of an IMO despite not being part of the IMO proceeding, which violates regulatory procedures. In addition, he determined that Barber is mentally ill and dangerous by departing from current medical standards and the prisons IMP. He therefore violated Barber's right to procedural and substantive due process, causing action pursuant to 42 U.S.C §1983.

## CAUSE OF ACTION NO. 2

57. All medical-Defendants owed Barber a duty to adhere to current medical standards and the IMP in determining that Barber suffers from a serious mental disorder and is dangerous as a result of the disorder. However, all medical-Defendants failed to adhere to such standards in making such a determination, thus breaching such duty. Such breach was the proximate cause of Barber's initial and continued placement on involuntary Haldol injections. Such injections are the proximate cause of the effects described in paragraph 50 of this Complaint. Said acts caused action pursuant to Neb.Rev.Stat. §25-208.

## RELIEF DEMANDED

WHEREFORE, Barber prays that this Court will grant the following relief:

58. Declaratory Relief: Declaring that (1) Barber maintains his

right to refuse psychotropic medications; and (2) that the director's and his designee's decision to uphold an IMO violates due process.

59. Injuctive Relief: Enjoining (1) the continuation of the administration of psychotropic medications on Barber against his will; (2) the continuation of the administration of psychotropic medications on all NDCS inmates against their will whose IMO had been appealed and upheld by the director or his designee; and (3) requiring that, henceforh, an IMO may be appealed only to a licensed physician eligible or board certified to practice psychiatry, and who is superior in position than the IMO applicants and IMHC;

60. Economic Damages: These damages should be granted where just and proper, and based on what the evidence shows;

61. Non-economic Damages: These damages should be granted where just and proper, and based on what the evidence shows; and

62. Punitive Damages: These damages should be granted where just and proper, and based on what the evidence shows.

Respectfully Submitted:

*Raysean Barber 7885*

RAYSEAN BARBER

P.O. Box 11099

Omaha, NE 68111

Plaintiff, Pro Se.

## CERTIFICATE OF SERVICE

I, RaySean Barber, hereby certify that a true and correct copy of my Fourth Amended Complaint was sent via first class mail, postage prepaid, to the Clerk of the U.S. District Court for Nebraska this 22nd day of June 2022.

Signed: _RaySean Barber 78893_
RAYSEAN BARBER

**RECEIVED**
JUN 27 2022
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

To: The Court
From: RaySean Barber
Date: June 22, 2022
Case: Barber v. Frakes, 8:20CV282

RE: Fifth Amended Complaint

Dear Court:

   I am writing you to let you know that, while I am submitting my Fourth Amended Complaint I still seek to amend the complaint to correct all of the errors that I made in drafting it. I would have submitted a motion to amend by now, but the defense still hasn't decided, or sent me their decision, whether they will oppose the motion to amend or not. As soon as I receive their decision I will file the motion and proposed complaint. Thank you; take care.

                                            Sincerly,
                                            RaySean Barber 78889
                                            RAYSEAN BARBER
                                            P.O. Box 11099
                                            Omaha, NE 68111
                                            Plaintiff, Pro Se.

RaySean Barber #78887
P.O. Box 11099
Omaha, NE 68111

Legal Mail

Clerk of the U.S. District Court
111 S. 18th Plz. #1152
Omaha, NE 68102

RECEIVED
JUN 27 2022
U.S. DISTRICT COURT