IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYSEAN BARBER,<br><br>    Plaintiff,<br><br>vs.<br><br>SCOTT FRAKES; DR. BRANDON HOLLISTER; DR. JEFFERY KASSELMAN; DR. SEAN THOMAS; CINDY POLAGE; DR. JEFF MELVIN; DR. NATALIE BAKER; DR. MEREDITH GRIFFIN; DR. AGNES STAIRS; DR. SEAN SEARS; DR. JASON OURADA; DR. YVONNE WESTOVER; DR. SARAH HOFF; PHYSICIAN'S ASSISTANT DOUGLAS MORIN; NICK GUENZEL; DR. JOHNNA WILLIAMS; DIANE SABATKA-RINE; and DR. HARBANS DEOL,<br><br>    Defendants. | **8:20CV282**<br><br>**MEMORANDUM AND ORDER** |

    This matter is before the court on Defendants' motion to dismiss (Filing 120) Plaintiff's Fifth Amended Complaint (Filing 119),[1] and on Plaintiff's motion for preliminary injunction (Filing 122). For the reasons discussed below, the court finds Defendants' motion should be granted and Plaintiff's motion should be denied.

### I. BACKGROUND

    Plaintiff, RaySean Barber ("**Barber**"), is an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS"). Filing 119, ¶¶ 1, 9.

---

[1] Defendants' motions to dismiss (Filings 89, 91, 93, 95) filed in March 2022 with reference to Plaintiff's Third Amended Complaint (Filing 77) were rendered moot with the filing of Plaintiff's Fourth Amended Complaint (Filing 116), which has since been superseded by the Fifth Amended Complaint. See Filings 114, 118.

Barber complains about an involuntary medication order ("IMO") for Haldol injections that was issued in November 2019 and renewed approximately every 6 months thereafter. He seeks to recover damages from eighteen individuals he alleges were responsible for the issuance and continuance of the IMO, claiming they violated his substantive due process rights and were negligent or committed malpractice. Filing 119, ¶¶ 50-53, 55. A procedural due process claim is also asserted against one individual. Filing 119, ¶ 54. In addition, Barber sues the Director of NDCS in his official capacity for declaratory and injunctive relief.[2] Filing 119, ¶ 2. Defendants contend the facts alleged do not state plausible claims for relief under 42 U.S.C. §1983 and they claim Eleventh Amendment immunity regarding the allegations of negligence or malpractice. Filing 121.

### A. November 2019 IMO Proceedings

Barber alleges: Dr. Brandon Hollister ("**Hollister**"), a psychologist, and Dr. Jeffrey Kasselman ("**Kasselman**"), a physician, submitted an application to NDCS's 3-member Involuntary Medication Hearing Committee ("IMHC") for an IMO on November 11, 2019, after diagnosing Barber with "schizoaffective disorder, bipolar type, multiple episodes, currently in acute episode, and deeming him dangerous as a result of the mental disorder." Filing 119, ¶ 31. The IMHC held a hearing regarding the application on November 18, 2019, and issued the IMO based upon a finding that Barber was mentally ill and dangerous. Filing 119, ¶ 33. The members of the IMHC were Dr. Sean Thomas ("**Thomas**") and Dr. Jeff Melvin ("**Melvin**"), both psychologists, and Cindy Polage ("**Polage**"), a nurse practitioner. Filing 119, ¶¶ 14-16, 33. Barber subsequently appealed the IMHC's decision to Scott Frakes ("**Frakes**"), the Director of NDCS, who upheld the decision on November 22, 2019, finding it was supported by the record. Filing 19, ¶¶ 11, 34.

### B. May 2020 IMO Proceedings

Barber alleges: Dr. Natalie Baker ("**Baker**"), a psychiatrist, and Dr. Meredith Griffin ("**Griffin**"), a psychologist, submitted an application to the IMHC on May

---

[2] Barber specifies that Defendant Frakes is sued in his individual and official capacities, while all other Defendants are sued only in their individual capacities. See Filing 119, ¶ 2.

2

8, 2020, to continue his IMO. Filing 119, ¶¶ 17, 18, 35. They diagnosed Barber with "delusional disorder, persecutory/somatic type, and ETOH use disorder" and "deem[ed] him dangerous as a result of the mental disorder." Filing 119, ¶ 35. On May 12, 2020, the IMHC held a hearing on the application and continued the IMO. Filing 119, ¶ 37. The IMHC at that time was comprised of Dr. Agnes Stairs ("**Stairs**"), a psychologist, as well Defendants Melvin and Polage. Filing 119, ¶¶ 19, 37. Barber appealed the IMHC's decision to Defendant Frakes, who upheld the decision on May 14, 2020. Filing 119, ¶ 38.

### C. October/November 2020 and April/May 2021 IMO Proceedings

Barber alleges: Dr. Sean Sears ("**Sears**"), a psychologist, and Dr. Jason Ourada ("**Ourada**"), a physician, applied to continue Barber's IMO on October 29, 2020, and again on April 21, 2021. Filing 119, ¶¶ 20-21, 39. They diagnosed Barber with "delusional disorder" and deemed him "dangerous." Filing 119, ¶ 39. The IMHC held hearings regarding those applications on November 5, 2020, and April 28, 2021, and decided to continue the IMO after finding Barber was still mentally ill and dangerous. Filing 119, ¶ 41. For the November 5, 2020, hearing, the IMHC was comprised of Dr. Yvonne Westover ("**Westover**") and Dr. Sarah Hoff ("**Hoff**"), both psychologists, and Douglas Morin ("**Morin**"), a physician's assistant. Filing 119, ¶¶ 22-24, 41. For the April 28, 2021 hearing, the IMHC consisted of Defendants Westover, Stairs, and Morin. Filing 119, ¶ 41. Barber appealed the November 5, 2020 IMHC decision to Defendant Frakes, who upheld the decision on November 13, 2020. Filing 119, ¶ 42. Barber appealed the April 28, 2021 IMHC decision to Diane Sabatka-Rine ("**Sabatka-Rine**"), Defendant Frakes' designee, who upheld the decision on May 5, 2021. Filing 119, ¶¶ 27, 43.

### D. October 2021 and March/April 2022 IMO Proceedings

Barber alleges: Defendant Hoff and Nick Guenzel ("**Guenzel**"), a nurse practitioner, applied to continue his IMO on October 13, 2021, and again on March 29, 2022. Filing 119, ¶¶ 25, 44. They diagnosed Barber with "delusional disorder" and deemed him "dangerous." Filing 119, ¶ 44. The IMHC held hearings regarding the applications on October 20, 2021, and April 11, 2022, and continued the IMO. Filing 119, ¶ 46. The October 20, 2021 IMHC consisted of Defendants Melvin and Morin, and Dr. Johnna Williams ("**Williams**"), a psychologist. Filing 119, ¶ 26, 46.

3

The April 11, 2022 IMHC consisted of Defendants Melvin, Sears, and Morin. Filing 119, ¶ 46. Barber appealed the IMHC's October 20, 2021 decision, which Defendant Sabatka-Rine upheld on October 25, 2021. Filing 119, ¶ 47. Barber also appealed the IMHC's April 11, 2022 decision, which Defendant Frakes upheld on April 14, 2022. Filing 119, ¶ 48.

### E. Claims Asserted

Barber alleges each health care provider who applied for the IMO or its continuance (Defendants Hollister, Kasselman, Baker, Griffin, Sears, Ourada, Hoff, and Guenzel), and each member of the IMHC who authorized the issuance or continuance of the IMO (Defendants Thomas, Melvin, Polage, Stairs, Westover, Hoff, Morin, Williams, and Sears), "departed from prevailing and current medical standards and the department's IMP, resulting in the misdiagnosis of a mental disorder." Filing 119, ¶¶ 32, 33, 36, 37, 40, 41, 45, 46. Barber further alleges these Defendants "depart[ed] from current medical standards and the IMP, thus misdiagnosing him as mentally ill and dangerous where no mental illness or dangerousness actually exists, thereby failing to exercise professional judgment, and thus are violating Barber's right to substantive due process, causing action pursuant to 42 U.S.C. § 1983." Filing 119, ¶¶ 51, 52. In addition, Barber alleges Dr. Harbans Deol ("**Deol**"), a medical doctor and the medical director of NDCS, "approved the continuation of an IMO despite not being part of the IMO proceeding, which violates the IMP," and "determined that Barber is mentally ill and dangerous by departing from current medical standards and the prison's IMP." Filing 119, ¶¶ 6, 28, 54.

According to Barber, "[t]he IMP are the procedures required to be used when an NDCS inmate is being considered for an IMO; it includes, among other things, the definitions required to be used in order for the officials involved to determine that an inmate poses a risk of serious harm or is gravely di[s]abled." Filing 119, ¶ 30. Barber states that "[c]urrent medical standards for diagnosis of a mental disorder and psychiatric examination can be found in the Diagnostic and Statistical Manual of Mental Disorders, Volume 5 ("DSM-5") and the comprehensive textbook of psychiatry, 10th edition." Filing 119, ¶ 29.

Barber alleges Defendants Frakes and Sabatka-Rine "upheld the IMO decision[s] based on the medical determinations of the IMHC. They do not have a

4

license to practice psychiatry, and thus they are not legally qualified to make medical determinations. In addition, the IMO decisions violated Barber's substantive due process rights, in that the medical-Defendants failed to exercise professional judgment by failing to adhere to prevailing and current clinical standards in determining that Barber is mentally ill and dangerous. Therefore, in personally upholding the IMO decision, Frakes and Sabatka-Rine also violated and are violating Barber's substantive due process rights, causing action pursuant to 42 U.S.C. § 1983." Filing 119, ¶ 53. See also Filing 119, ¶ 9 (Barber alleges "[t]his action arises pursuant to U.S.C. §1983 for the violation of rights secured by the U.S. Constitution.")

Barber also asserts a claim for "malpractice," alleging: "All defendants owed Barber a duty to adhere to current medical and legal standards in determining that Barber suffers from a serious mental disorder and is dangerous as a result of the disorders. However, all defendants failed to adhere to such standards in making such a determination, thus breaching such duty. Such breach was the proximate cause of Barber's initial and continued placement on an IMO. And such IMO proximately caused damages. Said acts thus caused action pursuant to Neb. Rev. Stat. §25-208." Filing 119, ¶ 55. See also Filing 119, ¶ 9 ("In addition, Barber brings this action pursuant to Neb. Rev, Stat. § 25-208 for the committance [*sic*] of malpractice by Defendants.").[3]

Barber contends he "is suffering physical, mental, and emotional damages" Filing 119, ¶ 50. He also alleges that he was prevented from going to work release in late 2021 as a result of the IMO. *Ibid*. In addition to requesting compensatory and punitive damages, Barber seeks to enjoin the continuation of the administration of psychotropic medications on him against his will, or against any other inmates whose IMOs were upheld on appeal by the NDCS Director or his designee, and to require that all future appeals be handled by a licensed physician or psychiatrist. Filing 119, ¶¶ 56-60.

---

[3] Neb. Rev. Stat. §25-208 provides that "an action for malpractice which is not otherwise specifically limited by statute" can only be brought within two years. This statute of limitations does not give rise to a cause of action, and the court need not consider whether it has any application here.

## II. STANDARD OF REVIEW

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).

The court must accept factual allegations as true, but is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678)).

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848, 849 (8th Cir. 2014) (internal quotations and citations omitted). "[I]f the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

As a preliminary matter, Barber argues that Defendants waived the right to challenge the sufficiency of his pleadings because they did not oppose his motion to file a Fifth Amended Complaint, and because the court implicitly determined in granting the motion that the proposed pleading could withstand a motion to dismiss. These arguments are baseless. Although Defendants did not file an opposing brief, Barber stated in his motion that Defendants were opposed to the filing. See Filing 117, p. 1. "Failure to file an opposing brief is not considered a confession of a motion …." NECivR 7.1(b)(1)(c). The court did not review the Fifth Amended Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it stated a claim upon which relief may be granted, see Filing 118, p. 1, and specified it was granting Barber's motion to amend only because there was no showing that Defendants would be prejudiced, or that there was any undue delay, bad faith, or dilatory motive on Barber's part; the court did not assess whether the proposed amendment would be futile, but instead concluded that "the sufficiency of the pleading can best be determined based upon any defenses or objections presented by Defendants in accordance with the Federal Rules." Filing 118, p. 2. Defendants have now properly presented those defenses and objections in a motion to dismiss filed pursuant to Rule 12(b)(6) with respect to Barber's constitutional claims (for failure to state a claim upon which relief can be granted), and pursuant to Rule 12(b)(1) with respect to his state law claims (for lack of subject matter jurisdiction).

### A. *Constitutional Claims*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, public employees act under color of state law while acting in their official capacities or while exercising their responsibilities pursuant to state law. *Id.* at 50.

Defendants do not dispute that they were state actors. Indeed, they argue in support of their claim of Eleventh Amendment immunity that "Barber acknowledges that Defendants are employed by NDCS." Filing 121, p. 17 (citing Filing 119, ¶¶ 11-28). Although Barber does not specifically allege such an employment relationship,

it can reasonably be inferred that all Defendants were acting under color of state law. Defendant Frakes, as the Director of NDCS, and Defendant Sabatka-Rine, as his designated representative, presumably exercised their assigned duties as NDCS officials in ruling on Barber's appeals. All other Defendants are alleged to have acted as health care providers "for NDCS," but Barber states each of them may have been "contracted to NDCS by another company," in which case "that company is being sued as well." Filing 111, ¶¶ 12-26, 28. Considering that Barber alleges these health care providers were required to follow NDCS regulations for the issuance of IMOs, see Filing 119, ¶ 30, they could be characterized as state actors even if not employed by NDCS. "A private party is considered a state actor if the alleged deprivation was 'caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the state or by a person for whom the [s]tate is responsible.'" *Sabri v. Whittier All.*, 833 F.3d 995, 1000 (8th Cir. 2016) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)).[4]

The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. "This clause has two components: the procedural due process and the substantive due process components." *Singleton v. Cecil,* 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (citing *Cnty. of Sacramento v. Lewis,* 523 U.S. 833 (1998)). "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim." *Id.* (cleaned up).

---

[4] In *West v. Akins*, for example, the Supreme Court found that a contractual relationship between a private medical provider and a state prison met the "acting under color of state law" requirement to subject the private provider to liability under § 1983. *See* 487 U.S. at 55; *see also Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (a private party may be characterized as a state actor for purposes of § 1983 when "the state has delegated to a private party a power traditionally exclusively reserved to the State," "where a private actor is a willful participant in joint activity with the State or its agents," and "where there is pervasive entwinement between the private entity and the state," with the ultimate conclusion turning on the particular facts of the case (internal quotation marks and citations omitted)).

The Supreme Court has held that an inmate "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper,* 494 U.S. 210, 221-22 (1990). However, the plaintiff's interest in refusing medication must be balanced against the state's legitimate and necessary interest in prison safety and security. *See Knight v. Hopkins*, No. 4:06CV3152, 2007 WL 4458939, at *8 (D. Neb. Dec. 14, 2007). This balancing test "permits the state to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is a danger to himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227.[5] "Under *Harper,* forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992).

The *Harper* Court also set forth four procedural protections that are the minimal constitutional requirements when a state involuntarily administers an antipsychotic drug to a prisoner: (1) notice; (2) the right to be present at an adversary hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses. *Id.* at 235; *see Doby v. Hickerson,* 120 F.3d 111, 113 (8th Cir. 1997).[6] A judicial hearing is not required; the hearing may be adjudicated by non-treating medical personnel. *Harper*, 494 U.S. at 231 ("Notwithstanding the risks that are involved, we conclude that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge."). Nor does due process require the inmate to be

---

[5] "In *Harper,* the Supreme Court also held that Washington's policy for the involuntary medication of inmates comported with the requirements of Due Process. That policy allowed an inmate to be subjected to involuntary medication if he (1) suffers from a 'mental disorder' and (2) is 'gravely disabled' *or* poses a 'likelihood of serious harm' to himself, others, or their property. The disjunctive demonstrates that 'gravely disabled' does not include dangerousness." *Green v. Dormire*, 691 F.3d 917, 923 (8th Cir. 2012) (internal quotations and citations omitted).

[6] "Washington's policy for the involuntary administration of antipsychotic drugs … included: (1) a hearing; (2) a neutral and detached trier of fact; (3) notice; (4) the inmate's right to be present at the adversarial hearing; (5) the inmate's right to cross-examine witnesses; and, (6) the right to appeal." *Green*, 691 F.3d at 924.

9

represented by an attorney; an inmate's rights may be sufficiently protected by a lay adviser familiar with the psychiatric issues involved. *Id.* at 236.

The constitutional right to substantive due process protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them. *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007). The "core of the concept [of substantive due process is] protection against arbitrary action" by the government. *Putnam v. Keller*, 332 F.3d 541, 547 (8th Cir. 2003) (quoting *Lewis,* 523 U.S. at 845). "[Supreme Court] cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense." *Id.* (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 128 (1992)); *see Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) ("Only in the rare situation when the state action is 'truly egregious and extraordinary' will a substantive due process claim arise (citation omitted)). "Only a purpose to cause harm *unrelated to the legitimate object of* the government action in question will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Mitchell v. Dakota Cty. Soc. Servs*., 959 F.3d 887, 898 (8th Cir. 2020) (quoting *Folkerts v. City of Waverly*, 707 F.3d 975, 981 (8th Cir. 2013) (emphasis in original)). "Whether conduct shocks the conscience is a question of law." *Id.*; *Terrell v. Larson,* 396 F.3d 975, 981 (8th Cir.2005) (en banc).

"[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849 (citation omitted). "A substantive due process claim invariably 'demands an exact analysis of circumstances before any abuse of power is condemned." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006) (quoting *Lewis*, 523 U.S. at 850). "Whether conscience-shocking conduct has occurred is 'tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other

10

considerations, fall short of such denial.'" *Norris*, 494 F.3d at 638 (quoting *Lewis*, 523 U.S. at 850 (internal quotation marks and citations omitted)).

The court "may also consider conduct that evinces a 'deliberate indifference' to protected rights of [the plaintiff], if [the defendants] had an opportunity to consider other alternatives before choosing a course of action." *Putnam*, 332 F.3d at 548; *see Neal v. St. Louis County Bd. of Police Comm'rs,* 217 F.3d 955, 958 (8th Cir. 2000) ("[W]here a state actor is afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, the chosen action will be deemed conscience shocking if the action was taken with deliberate indifference." (internal quotations omitted)).[7] *See also Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) ("The lower deliberate indifference standard 'is sensibly employed only when actual deliberation is practical.'" (quoting *Lewis*, 523 U.S. at 848-49). "For conduct to amount to deliberate indifference, the state actor must have subjectively understood his actions as creating a substantial risk of a constitutional deprivation. *Skokos v. Rhoades*, 440 F.3d 957, 962 (8th Cir. 2006).

As stated above, the Supreme Court has held that "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Morgan v. Rabun*, 128 F.3d 694, 697 (8th Cir. 1997) (quoting *Harper,* 494 U.S. at 227). In a case involving a substantive due process challenge to an involuntary medication order, the court must "start from a presumption that the decisions made by professionals are correct." *Id.* (citing *Youngberg v. Romeo,* 457

---

[7] In *Van Orden v. Stringer*, 937 F.3d 1162 (8th Cir. 2019), *cert. denied sub nom. Orden v. Stringer*, 140 S. Ct. 1146 (2020), the State argued that "something more akin to an intent-to-harm standard may apply when officials, after deliberating, are forced to choose among competing, legitimate interests." *Id.* at 1170; see *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 541-42 (6th Cir. 2008); *Matican v. City of New York*, 524 F.3d 151, 158-59 (2d Cir. 2008); *Schieber v. City of Philadelphia*, 320 F.3d 409, 419-20 (3d Cir. 2003). The Court of Appeals found it unnecessary to resolve the dispute over the applicable standard because the alleged actions of the defendant officials did not shock the conscience under the lesser "deliberate indifference" standard.

U.S. 307, 323 (1982)). "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised." *Youngberg,* 457 U.S. at 323.

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir.1990)). "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." *Faulk v. City of St. Louis,* 30 F.4th 739, 744 (8th Cir. 2022) (quoting *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006)).

Barber's conclusory allegations that Defendants Hollister, Kasselman, Baker, Griffin, Sears, Ourada, Hoff, Guenzel, Thomas, Melvin, Polage, Stairs, Westover, Morin, and Williams each "departed from prevailing and current medical standards and the department's IMP, resulting in the misdiagnosis of a mental disorder," Filing 119, ¶¶ 32, 33, 36, 37, 40, 41, 45, 46, "thereby failing to exercise professional judgment, and thus are violating Barber's right to substantive due process," Filing 119, ¶¶ 51, 52, fail to state a plausible clam for relief. Likewise inadequate is his conclusory allegation that Defendant Deol "determined that Barber is mentally ill and dangerous by departing from current medical standards and the prison's IMP." Filing 119, ¶ 54. There are no facts alleged to show how Defendants allegedly departed from any medical standards or NDCS procedures.

"A pleading need not include 'detailed factual allegations,' but it is not sufficient to tender 'naked assertion[s]' that are "devoid of further factual enhancement." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "'[L]egal conclusions' and 'threadbare recitations of the elements of a cause of action supported by mere conclusory statements' are not entitled to a presumption of truth when considering the sufficiency of a complaint." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Moreover, even if Barber's allegations were entitled to a presumption of truth, they do not show that Defendants were "deliberately indifferent" to Barber's rights. At most, the allegations suggest Defendants were negligent or committed medical malpractice in misdiagnosing Barber's mental condition and in concluding that he was dangerous. "Mere negligence or medical malpractice, however, are insufficient

12

to rise to a constitutional violation." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997); *see also Lewis*, 523 U.S. at 845-46 ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Upon initial review of Barber's Second Amended Complaint (Filing 14), the court determined that the case could proceed to service of process on substantive due process claims against Defendants Hollister, Kasselman, Baker, Griffin, Sears, and Ourada, for their actions in applying for the IMO or its continuation in November 2019, May 2020, and October 2020. The court explained:

> Barber alleges that "Defendant-applicants made up evidence and used evidence from Barber's past having nothing to do with the current beliefs for which he is being diagnosed as delusional to show that he was a danger to himself, others, and gravely disabled." (Filing 14, ¶ 3). Barber also alleges that they, and all other defendants, "failed to exercise professional judgement in finding that Barber was indeed delusional" because "in light of the standards set forth in the IMP with regard to an individual being gravely disabled or posing a likelihood of serious harm and the fact that the allegations never met those standards (and to the extent. that they did, they were all lies and Barber denied them)." (Filing 14, ¶ 77.)
>
> These allegations, along with other, more specific allegations contained in the Second Amended Complaint, are sufficient to state a plausible claim for relief against Dr. Hollister and Dr. Kasselman for deliberate indifference in applying for the IMO. It is alleged that they "made a bunch of false allegations that Barber was a danger to himself and others, and gravely disabled, mainly based on the complaints of theft and food tampering. But these allegations fell short of the standards set forth in the IMP …. The application also alleges that Barber believed that [prison] staff were controlling his thoughts. This was false.… The application also falsely alleges that Barber claimed that his food was poisoned." (Filing 14, ¶¶ 51, 52.) Barber alleges that Dr. Hollister acted because "Barber was placed on an IMO three years prior to Barber's current concerns which have nothing to do with Barber's past assertions for which he was placed on an IMO" and "because medical [falsely] reported that Barber was having thoughts put in his head." Dr. Kasselman allegedly "was in agreement with Dr. Hollister with respect to applying for an IMO for those reasons." Thus,

13

> Barber concludes, "the fact that they based their decision on Barber's IMO from three years ago and on a report that Barber believed his thoughts were being controlled, and did not base their decision on facts indicating that Barber's current beliefs about theft and his food made him delusional as defined in DSM-5, and because Barber's beliefs clearly did not indicate a delusional thought process, Dr. Hollister and Dr. Kasselman falsely diagnosed Barber with schizoaffective disorder." (Filing 14, ¶ 58.)
>
> For purposes of initial review, Barber's allegations are also sufficient to state a plausible claim for relief against Dr. Baker and Dr. Griffin, for deliberate indifference in applying for the first continuation of the IMO. In addition to alleging that these defendants "went along with all the false allegations from the initial application," Barber claims "they decided to lie in order to continue the IMO" by stating he "had a history of persecutory delusions." (Filing 14, ¶¶ 63, 64.) Barber also alleges they "decided to lie" about his ongoing fasciculations, labeling this legitimate physical complaint a "somatic delusion," because "they otherwise would have had no real reason to continue the IMO." (Filing 14, ¶ 62.)
>
> Similarly, Barber's allegations are sufficient to state a plausible claim for relief against Dr. Ourada and Dr. Sears, for deliberate indifference in applying for the second continuation. It is alleged these defendants "contended that Barber was mentally ill based on what 'documentation indicates' about Barber's past conduct," while adding "that Barber has made 'verbal threats'" without "specify[ing] who Barber threatened." Barber calls this a "false allegation." (Filing 14, ¶ 69.)

Memorandum and Order entered on April 28, 2021 (Filing 15), pp. 18-19. Barber's Fifth Amended Complaint contains no comparable factual allegations showing that the IMO applicants acted with deliberately indifference.[8]

---

[8] Barber cannot rely upon factual allegations made in the Second Amended Complaint, because that pleading is null and void. See Memorandum and Order entered on July 20, 2022, granting Barber leave to amend (Filing 118), p. 3, ¶ 3 ("When filed, the Fifth Amended Complaint will supersede all prior pleadings."). *See also In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("It is well-

14

The court further determined that Barber's Second Amended Complaint "fail[ed] to state a plausible claim for relief against the IMHC members for approving the IMO or its continuations, or against Director Frakes for upholding the committees' orders on appeal." Filing 15, p. 19. The court explained that the IMHC members would not be served with summonses because "[t]he mere fact that Barber appeared at hearings and denied the truthfulness of certain information contained in the applications does not create a reasonable inference that these defendants subjectively understood there was a substantial risk that the IMO applications were not supported by reliable evidence." Filing 15, pp. 19-20. "And because Director Frakes lacks medical expertise, he cannot be held liable for the medical defendants' diagnostic and treatment decisions. *See Ditter v. Nebraska Dep't of Corr. Servs.*, No. 4:16CV3159, 2018 WL 2184454, at *8 (D. Neb. May 11, 2018) (citing cases), *aff'd*, 750 F. App'x 508 (8th Cir. 2019). His role was limited to determining whether institutional procedures were followed." Filing 15, p. 20. The action thus proceeded against Defendant Frakes "only in his official capacity, with respect to Barber's requests for declaratory and injunctive relief." *Ibid.*

In the Fifth Amended Complaint, Barber has reasserted individual-capacity claims against the IMHC members (Defendants Thomas, Melvin, Polage, Stairs, Westover, Hoff, Morin, Williams, and Sears) by alleging that they departed from medical standards and NDCS regulations in concluding he was mentally ill and dangerous. As already discussed, there are no facts alleged to support these claims or to show that the IMHC members were deliberately indifferent in finding there was sufficient evidence to support the IMO.

Barber now seeks to hold Frakes and Sabatka-Rine liable in their individual capacities by alleging "[t]hey do not have a license to practice psychiatry, and thus they are not legally qualified to make medical determinations." Filing 119, ¶ 53. Again, no facts are alleged to show these Defendants were deliberately indifferent to Barber's rights when they upheld the IMHC decisions.

To the extent Barber is claiming due process requires a right to appeal the IMHC's decisions to a psychiatrist or other health care provider, there is no legal

---

established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect.").

15

authority for this proposition. The involuntary medication policy that was approved by the Supreme Court in *Harper* merely provided for the right to appeal to the superintendent of the penal institution. *See* 494 U.S. at 216. Justice Stevens, who dissented from the majority's opinion (joined by Justices Brennan and Marshal), found this constitutionally objectionable. *See* 494 U.S. at 254 (Stevens, J., dissenting in part) ("The trump by institutional interests is dramatized by the fact that appeals of committee decisions under the Policy are made solely to the SOC Superintendent."). The majority of the Court, of course, concluded otherwise, and found "no indication that any institutional biases affected or altered the decision to medicate respondent against his will." 494 U.S. at 233. That is also the case here.

Finally, Barber claims Defendant Deol, NDCS's medical director, should be held personally liable because he "ordered that Barber be placed on a continued IMO without being involved in the IMO process." Filing 119, ¶ 6. Barber alleges "this violates the IMP," Filing 119, ¶ 54, but does not allege any facts which would support a finding that Defendant Deol violated Barber's procedural or substantive due process rights. It appears from the pleadings that all continuations of the IMO were approved by the IMHC and upheld on appeal to the NDCS Director or his designee. It is further alleged that Defendant Deol "determined that Barber is mentally ill and dangerous by departing from current medical standards and the prison's IMP." Filing 119, ¶ 54. As already discussed, this conclusory allegation does not indicate Defendant Deol acted with the requisite degree of culpability.

In summary, Barber's Fifth Amended Complaint does not state a claim upon which any relief can be granted under 42 U.S.C. § 1983 against any individual-capacity Defendant or against Defendant Frakes in his official capacity. All section 1983 claims therefore will be dismissed with prejudice and Barber's motion for preliminary injunction, which cannot be granted in the absence of a colorable section 1983 claim, will be denied as moot. *See Oakwood Ventures, LLC v. Cochran*, No. 4:21-CV-3011, 2021 WL 409962, at *3 (D. Neb. Feb. 5, 2021) (denying plaintiff's motion for preliminary injunction as moot upon dismissal of complaint).

### B. State Law Claims

Insofar as Barber alleges Defendants are state employees who were negligent or otherwise culpable under Nebraska law, his only recourse is under the State Tort

16

Claims Act ("STCA"), Neb. Rev. Stat. § 81-8,209 *et seq.* "Under Nebraska law, a state official acting within the scope of his or her employment at the time of an alleged tort must be sued in his or her official capacity, and the plaintiff must "comply with the requisites set out in the [STCA].'" *Montin v. Moore*, 846 F.3d 289, 292 (8th Cir. 2017) (quoting *Bohl v. Buffalo Cty.,* 557 N.W.2d 668, 673 (Neb. 1997)). Though Barber's Fifth Amended Complaint "explicitly declares all claims are against defendants in their individual capacities, all the actions or omissions alleged occurred in the scope of defendants' state employment, and [the court] must treat the state law malpractice claim as if it is against defendants in their official capacities." *Id.* at 292-93.

The Nebraska Legislature has waived sovereign immunity for certain kinds of torts against the State of Nebraska, and its agencies and employees, but this waiver does not extend to actions maintained in federal court. The STCA grants exclusive jurisdiction over those claims to "the district court of the county in which the act or omission complained of occurred...." Neb. Rev. Stat. Ann. § 81-8,214 (Westlaw 2022). Consequently, any waiver of the State's sovereign immunity in the STCA "does not extend to actions brought in federal court." *Montin*, 846 F.3d at 293. Thus, the court lacks subject matter jurisdiction over all claims alleged against Defendants as state employees, and the claims will be dismissed without prejudice. *See Robinson v. Chamberlain*, No. 4:21CV3018, 2021 WL 877017, at *4 (D. Neb. Mar. 9, 2021) (citing additional cases).

If any Defendant is not required to be sued under the STCA for negligence or malpractice, then this court will decline to exercise jurisdiction under 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim … if … the district court has dismissed all claims over which it has original jurisdiction, …."). In most cases, when federal and state claims are joined and the federal claims are dismissed, the pendent state claims are dismissed without prejudice "to avoid '[n]eedless decisions of state law ... as a matter of comity and to promote justice between the parties.'" *Ivy v. Kimbrough,* 115 F.3d 550, 552-53 (8th Cir. 1997) (alteration in original) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). The dismissal will be without prejudice. *See Nagel v. City of Jamestown*, 952 F.3d 923, 935 (8th Cir. 2020) ("Such a dismissal is without prejudice and is reviewed for abuse of discretion.").

17

## IV. CONCLUSION

Barber's Fifth Amended Complaint fails to state an actionable claim for relief under 42 U.S.C. § 1983 against any Defendant. The court does not have jurisdiction over state-law claims brought against state employees, and it will decline to exercise supplemental jurisdiction over any other state-law claims.

IT IS THEREFORE ORDERED:

1. Defendants' motions to dismiss Plaintiff's Third Amended Complaint (Filings 89, 91, 93, 95) are denied without prejudice, as moot.

2. Defendants' motion to dismiss Plaintiff's Fifth Amended Complaint (Filing 120) is granted.

3. Plaintiff's motion for preliminary injunction (Filing 122) is denied as moot.

4. Judgment shall be entered by separate document, generally providing that:

    a. Plaintiff's § 1983 claims are dismissed with prejudice; and

    b. Plaintiff's state-law claims are dismissed without prejudice.

Dated this 12th day of September 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge